IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GOODWILL INDUSTRIES OF            )
NORTHWEST NORTH CAROLINA,         )
INC.,                             )
                 Plaintiff,       )
                                  )
         v.                       )    1:13CV1057
                                  )
STUART RAGS, INC., STUART F.      )
TROMBERG, and AMERICAN            )
CLOTHING EXCHANGE, INC.,          )
                                  )
                 Defendants.      )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Goodwill Industries of Northwest North Carolina, Inc. ("Goodwill") commenced this action by filing a Complaint (Doc. 4) in Forsyth County Superior Court on October 17, 2013 against Defendants Stuart Rags, Inc. ("Stuart Rags"), Stuart F. Tromberg ("Tromberg"), and American Clothing Exchange ("ACE") (collectively "Defendants").[1] Defendants petitioned to remove the action to federal court on November 21, 2013, based on diversity

---

[1] Plaintiff's original state court action was captioned as 13CVS6451.

jurisdiction.[2] (Doc. 1.) On the same day they petitioned for removal, Defendants filed an Answer including affirmative defenses and counterclaims. (Doc. 2.) Presently before this court is Goodwill's Motion to Dismiss Defendants' Counterclaims. (Doc. 13.)

This court has carefully considered Goodwill's Motion (Doc. 13) and all related replies and responses,[3] and for the reasons stated fully below, will grant Goodwill's Motion to Dismiss Counterclaims (Doc. 13) in part, in that Defendants' claim under the North Carolina Unfair and Deceptive Trade Practices Act

---

[2] The parties in the present action are completely diverse. Goodwill is a North Carolina corporation and Defendants are either Florida corporations or citizens of Florida. The amount in controversy exceeds the statutory minimum for diversity. (Pet. for Removal (Doc. 1) at 2.) However, the parties do not agree that Stuart Rags was a Florida corporation when it contracted with and/or received goods from Goodwill. (See Compl. (Doc. 4) at 2; Ans. (Doc. 2) at 2.) The parties do agree that as of the date of this lawsuit, Stuart Rags is a Florida corporation based in Miami, Florida. (Id.) For diversity purposes, this is the date that matters. "Because jurisdiction attaches at the commencement of an action, even if the citizenship of the parties changes after the commencement of the action so as to destroy complete diversity, subject matter jurisdiction is not destroyed, and the federal court continues to have authority to decide the case." Athena Auto., Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999).

[3] Related filings include: Goodwill's Supporting Brief (Doc. 14), Goodwill's Response to Counterclaim (Doc. 15), Defendants' Response in Opposition to Motion to Dismiss Counterclaim (Doc. 16), and Goodwill's Reply in to Response in Opposition (Doc. 17).

- 2 -

("UDTPA")[4] is dismissed, and deny the motion in part, in that this court will allow Defendants to pursue their breach of contract counterclaim.[5]

I. **BACKGROUND**

The present action stems from a contract dispute between Goodwill and Defendants regarding the sale of salvage goods by Goodwill to Stuart Rags. (Compl. (Doc. 4) at 1.) Goodwill is a non-profit corporation based in Winston-Salem, North Carolina. (Id. at 2.) Goodwill's mission is to provide jobs and workforce development in Forsyth County and the surrounding areas. (Id. at 3.) Goodwill funds this work through the accepting and selling of donations of clothing, housewares, and other goods. (Id.)

Sometime in 2011, Defendant Tromberg, acting as an officer of Stuart Rags, executed an agreement with Goodwill regarding Stuart Rags purchasing Goodwill's salvage items, (the "Agreement"). (Id. at 4.) The Agreement between Goodwill and

---

[4] Codified at N.C. Gen. Stat. § 75-1.1 ("Methods of competition, acts and practices regulated; legislative policy").

[5] Specifically, Goodwill moved this court to only dismiss Defendants' claim for breach of the "as is" provision contained in the parties' Exclusive Purchase Agreement ("Agreement"). (Pl.'s Mot. to Dismiss Counterclaim (Doc. 13) at 1.) This court will not parse out the specific clause of the Agreement upon which Defendants rely, but instead finds that Defendants have stated a breach of contract claim.

Defendants included a commitment by Stuart Rags to purchase all of Goodwill's inventory of textile salvage, shoe salvage, and miscellaneous salvage. (Id.) The Agreement also provided that Goodwill would sell the products to Stuart Rags "as is." (Id.) The Agreement provided no definition of salvage. Specifically, the Agreement stated:

### Sale and Purchase

> Subject to the terms of this Agreement, the Seller hereby agrees to sell the Purchaser and the Purchaser hereby agrees to buy from the Seller during the Term of this Agreement (as defined below) all of Seller's inventory, if any, of textile salvage, shoe salvage (both single and pairs) and miscellaneous salvage (purses and belts) (collectively, the "Products"). It is expressly understood and agreed that the Products will be sold "AS IS" and the Seller makes no warranties whatsoever with respect thereto. The Seller expressly disclaims all implied warranties of merchantability and fitness for a particular purpose and all other warranties, express or implied, with respect to any and all Products sold to the Purchasers.

(Compl., Ex. A, Exclusive Purchase Agreement ("Agreement") (Doc. 4-1) at 1.)

The Agreement is at the center of the current dispute. Goodwill asserts that Defendants "now refuse to pay for approximately 56 loads of salvage materials purchased under the Agreement and invoiced by Goodwill NWNC between May 10, 2013 and July 2, 2013." (Compl. (Doc. 4) at 5.) Defendants admit that they refused to pay the invoices submitted to them by Goodwill

- 4 -

between May 10, 2013 and July 2, 2013, but deny that these invoices were for items purchased. (Defs.' Ans., Affirmative Defenses, and Counterclaim ("Ans.") (Doc. 2) at 4.) The invoices in question total $563,828.77. (Compl. (Doc. 4) at 5; Ans. (Doc. 2) at 4.) In addition, both parties agree that Defendants made some attempt to contact Goodwill during the invoice period with concerns regarding the quality of the product supplied by Goodwill to Defendants. (Ans. (Doc. 2) at 4.)

Defendants claim that Goodwill breached the Agreement with Defendants by not supplying "all" of Goodwill's inventory, as required by the Agreement. (Id.) Defendants assert that Goodwill offered what Defendants contend is "all" of the salvage for sale at outlets, before selling to Defendants what was obligated under the contract, leaving Defendants with the "left-overs." (Id. at 4-5.) Goodwill claims that Stuart Rags sent Goodwill a letter on or about July 10, 2013 purporting to reject or revoke acceptance of the salvage goods because the goods did not meet the contracted standards. (Compl. (Doc. 4) at 5.)

In July 2013, Stuart Rags and ACE sued Goodwill in state court in Florida alleging various causes of action surrounding this chain of events. (Id. at 6.) On October 2, 2013, after the action was transferred to North Carolina, Stuart Rags, and ACE dismissed their claims without prejudice prior to any answer or

- 5 -

counterclaim being filed by Goodwill. (Id.) Goodwill asserts that also on October 2, 2013, Stuart Rags sent Goodwill another letter rejecting the salvage materials and demanding that Goodwill remove the materials. (Id.) Defendants deny this allegation. (Ans. (Doc. 2) at 5.) This contract dispute is the matter currently before this court.

II. **LEGAL STANDARD**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N. Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible provided the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id.

III. **ANALYSIS**

Defendants assert two counterclaims in their Answer: (1) Goodwill breached its contract with Defendants by

- 6 -

reprocessing its inventory through secondary sale at outlet centers before selling the salvage to Defendants and, therefore, did not sell Defendants "all" salvage pursuant to their contract and (2) Goodwill violated the UDTPA through the same actions of selling products in a secondary market before selling the remaining products to Defendants. (Ans. (Doc. 2) at 12-14.)

In their first counterclaim, Defendants assert a breach of contract claim. This court is sitting in diversity, and must apply North Carolina substantive law to Defendants' contract claim. See Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 290-91 (4th Cir. 2010). In North Carolina, "'[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.'" Becker v. Graber Builders, Inc., 149 N.C. App. 787, 792, 561 S.E.2d 905, 909 (2002) (quoting Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)). Both parties agree they entered into a valid contract regarding the sale of Goodwill's salvage to Stuart Rags and both sides allege the Agreement was breached. Goodwill argues that Defendants breached the Agreement when Defendants failed to pay for goods sold and invoiced in May through July 2013. (Compl. (Doc. 4) at 8-9.)

Defendants allege that Goodwill breached the Agreement by selling inventory in outlet centers before selling Stuart Rags

- 7 -

the inventory pursuant to the exclusive purchase agreement signed by the parties. (Ans. (Doc. 2) at 13.) Specifically, Defendants assert that Goodwill offered its products for sale in "Discount, Outlet, or 'per pound' centers" and thus added a second layer of seller between Goodwill and Defendants. (Id.) As a result, Goodwill failed to deliver "'all of [its] inventory of the Products' in 'as is' condition," because Goodwill was not selling the entire quantity of its salvage as the parties had agreed. (Id.; Defs.' Mem. in Opp. to Pl.'s Mot. to Dismiss Counterclaim (Doc. 16) at 3-4.) In response, Goodwill claims that Defendants' counterclaim "improperly converts" the "as is" provision into a warranty that the provision means to disclaim. (Pl.'s Mem. in Supp. of Mot. to Dismiss Counterclaim (Doc. 14) at 5-6.)

"If the language of a contract is clear and only one reasonable interpretation exists, the courts must enforce the contract as written and cannot, under the guise of interpretation, rewrite the contract or impose terms on the parties not bargained for and found within the contract." Crider v. Jones Island Club, Inc., 147 N.C. App. 262, 266, 554 S.E.2d 863, 866 (2001) (internal quotation marks and alterations omitted). If there is any ambiguity to a contract term, the court cannot rule on it as a matter of law. See Schenkel &

Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008). "An ambiguity exists where, in the opinion of the court, the language . . . is fairly and reasonably susceptible to either of the constructions asserted by the parties." St. Paul Fire & Marine Ins. Co. v. Freeman-White Associates, Inc., 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988) (internal quotation marks omitted). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." Id. (internal quotation marks omitted).

Although the parties focus on the meaning of "as is" in their filings, this court finds there is ambiguity in the meaning of the word "all" in the Agreement. Defendants seem to assert that "all" means all inventory after Goodwill attempted to sell it once. Goodwill alleges that "all" simply means all inventory left over, no matter how many times Goodwill attempted to sell it or if it moved through several retail levels before being sold to Defendants. The contract language states that Goodwill will sell "all" its inventory to Stuart Rags, but does not specify when in the distribution timeline "all" comes into existence. This temporal component of the word "all" makes it unclear what the contract means with regard to "all." At this stage, this court has no basis to identify the intent of the

parties concerning "all" and this court finds both explanations of the word "all" to be reasonable. This lack of clarity of what is meant by the word "all" and what duties and responsibilities flow from the word "all" to the parties makes dismissal under Fed. R. Civ. P. 12(b)(6) inappropriate.

Defendants' second counterclaim is an action for violation of North Carolina's UDTPA statute. (Ans. (Doc. 2) at 13-14.) Defendants assert that Goodwill violated the UDTPA by "reprocessing its inventory of Products which were committed for sale to [Stuart Rags]" and by "failing to disclose its plan to intentionally breach" the Agreement through such conduct. (Id. at 14.)

> The UDTPA is meant to prevent unfair or deceptive acts or practices in or affecting commerce. In order to state a claim under the UDTPA, a plaintiff must show (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff.

Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012) (internal citations and quotation marks omitted). "A trade practice is unfair and deceptive when it offends established public policy as well as when the practice is immoral, unethical, oppressive, or unscrupulous. In essence, an unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position."

- 10 -

Southeastern Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330 572 S.E.2d 200, 206 (2002) (citations omitted).

"A simple breach of contract is not unfair or deceptive, however, absent substantial aggravating circumstances. And a broken promise is unfair or deceptive only if the promisor had no intent to perform when he made the promise." Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch, 80 F.3d 895, 903 (4th Cir. 1996) (internal citations and quotation marks omitted).

This court finds that Defendants have failed to state a claim under the North Carolina UDTPA statute. Defendants have not pled any aggravating factors within their breach of contract claim that would violate North Carolina's UDTPA statute. There is no disagreement that Goodwill reprocessed goods before it sold them to Defendants. However, there is no evidence that Goodwill acted unfairly or deceptively in doing so. Under Goodwill's interpretation of the contract, they were selling "all" their salvage goods to Defendants as promised. As stated supra, the disagreement stems from the meaning of the word "all." The actions resulting from this disagreement may be a breach of contract for one party. However, the pleadings do not allege that aggravating factors exist to make this claim rise to the level of a North Carolina UDTPA violation.

- 11 -

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Goodwill's Motion to Dismiss Counterclaims (Doc. 13) is **GRANTED IN PART**, in that Defendants' claim under the North Carolina UDTPA is dismissed, and **DENIED IN PART**, in that this court will allow Defendants to pursue their breach of contract counterclaim.

This the 21 day of May, 2015.

William L. Osteen, Jr.
United States District Judge